in case for argument please. Your Honor, case number 24-3094 from the District of Minnesota, Minnesota Voters Alliance et al. v. Keith Ellison et al. Mr. Nelson, when you're ready. Good morning, Your Honors. Nicholas Nelson of the Upper Midwest Law Center for the Plaintiff's Appellants. I welcome your questions at any time, but I do have about 90 seconds of prepared question. The counterclaim remains pending, right? It does. And the rest was on a motion to dismiss. Is there any jurisdictional problem here or are we just here on the preliminary injunction denial? Otherwise, do we have a final order is sort of what I'm asking. The appeal is from the motion to dismiss and the P.I. denial. You know, I don't know that, I will be honest, I have not thought through the jurisdictional implications. I think that the reasoning. Well, in a general situation, if you had a motion to dismiss that was granted, but a counterclaim that remained pending, you wouldn't be able to appeal that. It's not a final order, right? Having not thought about it before, yes, that seems right. I would say that, I mean, I think that the P.I. denial probably incorporated the reasoning from the motion to dismiss denial. So it may be six of one, half a dozen of the other. Yeah, that may be right. But it wasn't argued that way, which I thought was kind of interesting. It was argued more as an appeal of a motion to dismiss rather than a denial of a preliminary injunction. And I think that's because of the way, I mean, our appeal on the P.I. was basically just that the Court ruled on likelihood of success and the merits. We want this Court to assess that and send it back for the rest of the data phase analysis. So that's how you get, I guess, six of one, half a dozen of the other. Thanks for the curveball right out of the gate. If that's true, though, now I'm thinking my brain's sort of spinning, which is if that's true, then what is actually before us in terms of the legal issues? Is everything before us? Is the as-applied part of Section 2? Is the prior restraint issue before us? I'm just trying to figure out where that leaves us if the counterclaim is still pending. I do really think it's six of one, half a dozen of the other because we did ask for a P.I. on everything, right? So I think that's the way it is. We'll see if the other side has a different view on that. Anyhow, on the merits, appellants want to argue that a Minnesota statute is unconstitutional. They have to worry that if they do, they will wind up in jail for it, and the First Amendment does not allow that. This Court held in 281 Care Committee that the First Amendment fully protects even knowingly false political speech. And the reason for that is because a ban on that kind of speech will chill even similar speech that's true or that the speaker The case is about a Minnesota statute that makes it a crime to make knowingly false statements in order to discourage someone from voting. Under 281 Care Committee, the state would have to pass strict scrutiny for the great majority of applications of that statute. Now there might be... But fraud is not protected. Is that right? Am I understanding that correctly? I mean knowingly false is, but fraudulent statements are not? Am I reciting the law properly? What is fraud is the question, I guess. I mean it can't just be a false statement, right? It has to be, you know, attempts to get to... The Alvarez court in the Stolen Valor case said legally cognizable harm, right? I don't think... You know, Judge Grunder wrote a long thoughtful concurrence about this in Animal Legal Defense Fund. I don't know that that means any harm whatsoever, but I think, you know, getting money, getting some property through fraud, yeah, that would be covered. How about coercing someone not to vote? So, two points here, right? I mean, you know, I think first you don't have to get there because of 281 Care Committee, which says, well, wait a minute. You know, before we talk about legally cognizable harm, there's sort of a hard core of First Amendment protection for political discourse. I think it extends to other things too, scientific discourse, any sort of serious public debate where we just don't want to risk this is actually the Alvarez dissent. We don't want to risk the government getting to label one side true or false. It doesn't work under the First Amendment. So I think this is political speech in that sense, where, you know, you can think of, you know, campaign speeches, op-eds contain all sorts of statements that if someone wanted to argue they were false, they could say, oh, I spent money based on this. It was fraud. I should be able to sue. And generally you can't, and that's why, because we want to protect political debate. But if you do get to, you know, is this legally cognizable harm, I think you could assume I'm not going to try to talk Judge Grunder out of his animal legal defense concurrence. I think you could assume, okay, maybe losing the right to vote would be. Maybe a law clerk could look into whether it was in 1791. But even if it were, the Animal Legal Defense Fund majority opinion says it can't just be a conceivable connection to a cognizable harm. It has to be a material connection. I think there has to be some sort of likelihood of but-for causation, some sort of likelihood of proximate causation. I think that's completely missing here. You know, this actually just requires intent and nothing more. What if we gave it a narrowing instruction? And I'm thinking back to my time on the Minnesota Supreme Court. We have a Minnesota statute, a case called State v. Crowley dealt with knowing false statements of fact about police misconduct. And the court, even though there weren't the elements of defamation, read it as applying only to criminal defamation, which is an unprotected category. So couldn't we read into this statute a reliance requirement and gaining a material advantage and say it only covers fraud? Hard to do in light of the breadth of the way it's drafted. I guess, you know, the easiest place to start there is with Section 1 of the statute, actually, which is, you know, it uses the word threats, right? Which you would think, oh, can we construe that to be First Amendment threats? But then it goes on to say, for example, threats including, you know, threatening to fire someone from their job, threatening economic harm, things that's pretty clearly not within, you know, true threats under the First Amendment. So it's hard to construe that one that way. I think you'd run into similar difficulties with Section 2, you know, where it says, really, it just says you just have to know this is  Well, I tend to agree with you. I just sent it in Crowley. But I had to ask the question. So I do, I mean, and I previewed this before, but I think this is the way the jurisprudential landscape shakes out. You know, you have Olivares, where we know there was no controlling opinion. This Court has precedentially construed it kind of in two main instances. One is 281 Care Committee, and then the other is the Animal Legal Defense Fund cases. I think those are complementary to each other. They address different issues. But I think no matter which line of reasoning you follow here, this statute's unconstitutional. The 281 Care Committee, for the reasons that I mentioned, that there's this core of political speech where even false statements still enjoy, knowingly false statements, still enjoy full protection, sorry, First Amendment protection. I think we're within that. I think talking about voting, who can vote, is sort of, you know, paradigm political speech under any sense of the word. I think also, especially because we're talking about whether a statute is constitutional, that's been, you know, that kind of debate has been at the forefront of our political discourse since right after the founding, right? We talked about can Congress charter a bank, and now we're talking about affirmative action and abortion and the limits of presidential power, and all those are debates about what the Constitution means. I think it's unthinkable that that's not, that's outside the core of First Amendment protection. Can I ask you about, I'm trying to figure out the puzzle that is this case, which is we've got Subdivision 2 and Subdivision 5. And if we were to find your way on 2 and 5, would we have to reach 1 and 3? And that is the as-applied challenge to the knowing false statement and the prior restraint. In other words, I'm trying to figure out what role 1 and 3 are playing in this case. Yeah. So, I mean, 3, I think, is largely duplicative of the rest, right? I mean, it's, you know, just generally hindering someone from voting. So to the extent that it's in play, I assume it's the same kinds of things that the other provisions would be. One is different because it does involve this threats factor, right? And obviously, I think the analysis is different there because we're talking about First Amendment threats rather than First Amendment false statements. I think 1 is much more clearly overbroad, although the overbreadth, you know, goes maybe to things like, you know, economic harm or other things that aren't directly at issue here. But, you know, if, I mean, the Anoka County attorney is claiming in the district court that, you know, talking about whether someone's ineligible to vote is a threat because But there are also acts, at least 2 is pure speech, it seems like. And I think they would even concede that it's hard to find, it's hard to say that knowing false statements are acts. But 1 and 3 talk about threats and intimidation and harassment and things like that. And so then we get to, you know, are they facially overbroad? And it's hard to say that they are if you have acts covered by 1 and 3. Perhaps. I mean, this may be limited to, the facial problem may be limited to the word threats in Section 1, right? Not intimidation and other things like that. That's my thought about that. Okay. You know, so I talked about the 281 Care Committee construction of the Alvarez principles. And I do want to spend a moment on the Animal Legal Defense Fund side of it as well. I think you don't need to get there because I think we're in that, the hard core of First Amendment protection that 281 Care Committee scoped out. But if you go to Animal Legal Defense Fund, you know, it applies basically the Alvarez plurality approach and says, well, we need, you know, association with cognizable legal harm before you're outside the realm of First Amendment protection. And again, I think the key here, and this was the holding or one of them in Animal Legal Defense Fund, is that it's not just any association, right? It's not a conceivable association. It's not, can you imagine some case where, you know, Rube Goldberg would connect this with a legally cognizable harm. It has to be a material connection, right? I think this case, you know, this is the as-applied side of it, but it illustrates how that's lacking from this statute, right? The appellants here want to argue that, you know, a felon voting statute is unconstitutional because felons on parole under the Minnesota Constitution, they say cannot vote. Well, the whole point of being on parole is that you have a state agent whose whole job is to tell you what you are and are not allowed to do, meet with you regularly, that sort of thing. So if you're a felon who's out on parole and your parole officer is telling you, you can vote, you're allowed to do this, don't worry about what else you might be hearing in the press, how likely is it that you're actually going to just read a blog post from some random organization like Minnesota Voters Alliance and decide, oh, that must be right. I'm not going to listen to my parole officer. I better not vote, right? What about the fact that the district court made this point? She said this is not a matter of public concern because it was about, it was about who can vote, not who should vote, that who should vote is something for the, you know, for political, you know, discussion. I mean, should felons vote, but not whether they can vote. What do you buy, what do you think of that analysis? I think that's an impossibly narrow reading of public concern, you know, for the reasons that I discussed. I mean, what the Constitution allows and how our government operates are central questions about, you know, our politics, right? So if we can't talk about that, then we can't talk about, say, you know, what does the Constitution say about affirmative action, about abortion, about any other central issue of the day because, oh, that's just a question of law that's either right or wrong. That can't be the way it works. Do I need to reserve my time from here? Well, that would be up to you. I would like to do that. Thank you. Very well. May it please the Court, I'm Assistant Attorney General Alan Cook Barr, and I represent aptly Minnesota Attorney General Keith Ellison. The Court should affirm dismissal of MVA's claims because the election integrity statute as applied does not prohibit the speech that they plead in their complaint, and most of their facial challenge is not before the Court. The portions that are fail on the merits. This case is You know, I have to ask, what about the chilling effect? I mean, that's unique to the First Amendment, and so maybe you can make an argument that this speech is not within the scope of the statute, but that you still have to deal with the chilling effect. As to the chilling effect, Your Honor, I think this statute has intent and knowledge guardrails that address that. For an individual to violate the statute, they have to, for the false statement set piece that is the majority of this case, they have to know that the statement is false. If, as MVA pleads that they are speaking things that are true, they definitely cannot violate the statute, so there's no danger. Now, you have a problem, though, because Anoka County already disagrees. They brought an enforcement action, so they clearly think that what's going on here violates the statute, and so you already have a chilling effect in the case. So I think that goes to the unusual procedure posture of this case. As to MVA's complaint, you're looking at what did they plead in their complaint. They pleaded that they knew these statements are true. Now, Anoka County may say, we don't believe them. We think they actually do know the statements are false, and so we're going to take action because they're lying about what they know and they don't know. Well, let me just ask about the breadth of this because this is a problem. So my clerks and I have discussed, for example, in the context of this case, whether felons can vote in Minnesota. If I were to tell my law clerk, you know what, I read the Constitution the same way, and felons can't vote. By the way, I have not said that. But would that then violate the statute? Because I don't see it. It doesn't have to be communicated to somebody who's a felon. It just has to be a false statement of fact. With the intent of depriving someone of voting rights. Well, would it chill my action? It shouldn't because you don't have that intent. There might be some political actor on the other side who doesn't like me very much who wants to bring a prosecution against me, and intent is a slippery thing. They say, of course he intended. He's a smart guy. He's a judge. He intended to mislead people. Is it covered by that? Certainly, someone could bring a claim against you, you know, but the same is true of false advertising claims, of defamation claims. We don't say that just because people can bring what are ultimately meritless claims, you don't get to have a cause of action. Didn't we kind of say that in 281, though? In 281, there weren't the procedural safeguards that there are in this case. In 281, complaints could be brought by anyone at the Minnesota Office of Administrative Hearings. It's now the Court of Administrative Hearings, but an administrative agency. That agency didn't have the ability, if someone brought a meritless claim, to sanction the other side. Its powers were limited by statute to adjudicating it, and either . . . So this isn't chilling because a court could sanction someone after the complaint is brought? After the complaint is brought, and I think that necessarily follows from the fact that other causes of action that implicate the First Amendment exist and that those haven't been struck down under the First Amendment. If the mere act of being able to bring a cause of action were enough to say that we're going to worry about First Amendment chilling effects, then no one would be able to bring a defamation action or a false advertising action or anything of that nature. So the fact that those causes of actions exist, consistent with the First Amendment, necessarily means that there must be something about at least bringing an action in court that allows it to pass . . . But those all fall into unprotected categories. The false advertising, I think, falls into fraud because you're trying to gain a material advantage. Defamation is unprotected, so you don't have to worry about that either. But here, I don't think we have fraud because there's no material advantage requirement, nor is there a reliance requirement. Like I said, I could be talking to my law clerk about whether felons can vote, and I could conceivably — I know you say I don't have intent, but I could conceivably be prosecuted for that, even if nobody relies on it. I think it's unprotected for two reasons. For one, the fraud reason, which I'll come back to in a moment. But I also think that if the Court holds that this speech, that they even state a claim as to as applied, I think the speech is clearly allowed under Footnote 4 of Manski, which says the States unquestionably can prohibit speech intended to mislead about election procedures. That's what this does, is it prevents folks from going around giving . . . But this is a — I mean, election procedures, I get the languages used, but this is about the interpretation of the Minnesota Constitution, fundamentally, isn't it? Isn't that — I'm struggling with how those are similar. I get the Manski languages out there. I don't understand the distinction between the should and can, how that's the constitutional, the line drawing here. So I don't know that being in the Minnesota Constitution is significant, because it . . . Isn't that the essence of political argument? So, for example, Minnesota statutes and Minnesota Secretary of State's rules, rather than the Constitution, lay out, you know, what time polling places are going to be open, where polling places can be, that sort of thing. Debates about what those should or shouldn't be, you know, if someone says your polling place can't be within 200 yards of a church or something, I don't know. Making that normative statement, certainly protected by the Constitution to argue about whether or not that's what it ought to be. But saying the polling place cannot be within a church, and it is, and so your vote's going to be invalid. And you think that's the same as arguing the Minnesota Constitution prohibits felons from voting? That's the same sort of speech? It's the same public import? Yes, because it's the where as opposed to the who. And appellants agree that Minnesota has a compelling interest in certainly the where and the when on page 13 of the reply brief. And the only difference is the question of who and why the who versus the where or the when would be significant for this First Amendment analysis doesn't really make any sense, Your Honor. Well, is it that the one can be reasonably contested by people of good faith and the one, I mean, they seem like different questions, right? One is readily disprovable. The other one is clearly not. And I think that contest piece goes back to the intent guardrails that this statute has. If you are arguing over what the law ought to be, then you aren't making the same Well, you're arguing what the Constitution says. Yes. You're not arguing what it ought to be, I take it. They're arguing the Constitution is clear. Well, I think everyone agrees on what the text of the Constitution says. But you are arguing how that text ought to be interpreted. And so that's a normative discussion as opposed to a facts-driven discussion about what if someone with a felony conviction went into a polling place today and tried to vote, would they be arrested or not? And those are very different questions as to what should happen in that case versus what would happen. Can I ask you, so I actually think this may be viewpoint-based as well. I think it is clearly content-based. I know the state has disputed it, but I don't think that's a good argument. But on viewpoint-based, if the same group had said, you know what, 16-year-olds can vote, and told a bunch of 16-year-olds and they all showed up at the polling place and it turns out they couldn't vote, that's not, no matter how knowing and intentional it is, that is not illegal. So you could say, you could spread all kinds of misinformation about other things, but you can't spread misinformation about felons, or anything that's a hindrance to voting. And so I'm wondering if it becomes viewpoint-based because it only protects a narrow sliver of the total amount of speech that could be misleading in the voting context. I don't think it is, Your Honor, because it's getting at two different problems. And so the state doesn't need to address those two problems within the same statute. So on the one hand, you've got what this statute addresses, which is the issue of people being denied the right to vote. And on the other hand, you've got a very different problem of people being told they can vote, which may or may not even be a problem because if I falsely tell a 16-year-old they can go and vote, they go into the polling place, they try to vote, they're going to get stopped by an election official before they can cast their vote.  Yes, hopefully. They won't be able to probably register, so they'll have to register. So either they show their fake ID they used to get into wherever they get into, and also get into, but I'm digressing. Point being, there are other safeguards to prevent that harm. And so the state doesn't need to get after that harm in this statute. But is it at least content-based in the sense that you have to look at the speech itself to figure out whether it violates the statute? In other words, you've got to figure out whether or not it hinders somebody from voting, which seems to me to be a clearly content-based restriction. I think so, Your Honor. Yes. But that does get back to, and I want to at least briefly make the point that in light of the intent and knowledge requirements in this statute, I think their as-applied challenge fails. And as to their facial challenge, they don't plead any facts about how this would impact folks differently than themselves. This Court has made clear that we prefer to resolve cases as-applied because we don't want to strike down statutes that the legislature duly enacted. And so to get to that facial remedy, you need to show that there's something that is going to be affected other than how it's affecting the parties before the Court. And they did not plead any facts to that effect. So I think this is a much narrower case than the MVA would like to be because they didn't make those allegations. What about Subdivision 5? I'm trying to figure out how this is not a prior restraint. And I think the evidence of it, in fact, may be the counterclaim by Anoka County, the fact that they've already brought a pre-enforcement action. They have no idea what these plaintiffs were going to say, but they're saying you can't say it. And so at least that's a claim they're making. So why isn't it a prior restraint? I think the Supreme Court has defined prior restraints fairly narrowly. If you look at the Alexander case we saw in our brief, for something to be a prior restraint, it has to be either a judicial or an administrative order. It can't just be the state threatening to take action because the concern about prior restraints is you take the case out of the First Amendment analysis where now it's no longer about is this conduct protected or not from the First Amendment, but rather it's just there's an order out there, you violated it, and so we're going to take action against you for violating the order. First Amendment doesn't matter. Suppose the district court had said, you know what, Anoka County, you're right. We don't know what they're going to say. We're going to issue a preliminary injunction. Isn't that a prior restraint? That preliminary injunction would be a prior restraint. And then the problem is, isn't that exactly what the statute allows? The statute sets up that framework, but the mere creation of the framework doesn't make the framework itself the prior restraint. Alexander makes clear that the prior restraint is the order or the order either from an administrative agency or from a judicial body. And even if the Court disagrees and thinks that it is a prior restraint, the Supreme Court has made clear that just because the statute creates a framework for prior restraint doesn't always make it unconstitutional. In particular, in City of Littleton, cited in our brief in our prior restraint discussion, the Court makes clear that if there are certain procedural safeguards, then the prior restraint is not unconstitutional. In particular, city resolution, prompt final decision, and putting the burden of proof on the party that is seeking the judicial order. City of Littleton, the Court also held that ordinarily judicial safeguards that are in state court will satisfy those requirements. So unless NBA can point and say, in Minnesota specifically, the procedures for these TROs, these PIs, somehow varies from the ordinary procedures that would satisfy those protections. But I'm not sure that, I guess I would quibble with that because I'm not sure this one sets up high standards either. It doesn't require the district courts or state courts to decide on the merits. It could be a preliminary determination that the speech is covered by the statute. And so this is not a situation where you have to, beyond a reasonable doubt, clear and convincing evidence at immediate hearing, a full discussion of the merits. It seems like a district judge is going to just come in and say, yeah, sounds like it violates the statute, preliminarily enjoined. Isn't that a problem? I think as, if that were it as applied, that could be a problem. But that gets into facial versus as applied. And here, where there isn't an order in place, since we're just looking at the framework as a whole, facially at least, that won't necessarily happen. And so I think it would be premature for a federal court to say it's always going to create those first common concerns. Finally, just very briefly on the vagueness challenge, I've alluded to this a few times but I think the intent requirements of the statute resolve any vagueness concerns that MVA has. Because MVA has to know in its head what it intends to do, has to know that the statement is false, it can't complain that it lacks knowledge of whether it is or isn't violating the statute. Because MVA's claim that speech isn't covered by the statute, their as applied challenge fails and the facial challenges that are probably for the court fail on the merits. Could I ask just one additional question? Narrow tailoring. I just, why is counterspeech not enough? Alvarez goes to great lengths to talk about counterspeech. The majority, the plurality in all, or the plurality, the concurrence, everyone talks, even the dissent talks about that. Why isn't counterspeech enough here? I think if the court looks at Hustler Magazine v. Falwell, the Supreme Court does recognize that in certain cases, counterspeech is going to be insufficient. I think in particular on issues like voting rights, that's the case. If MVA sets up someone outside polling places and is handing out leaflets saying felons can't vote, if someone says, well, I'm on the ballot, they find out the next day that, oh, they could have voted, that's too little, that's too late. They don't get to vote. And because elections can be decided by such narrow margins, that creates a real harm. And counterspeech is insufficient to address that harm. Thank you, Your Honors. Thank you, Mr. Barr. Rebuttal. I'll start quickly where we started before, just by noting that the motion to dismiss Grant was, of course, did completely resolve our claim for injunctive relief, to the extent that makes a difference in terms of denying an injunction to jurisdiction. I stand by what I said about six of one, half a dozen of the other anyway, but on the analysis Well, I just think it should have been addressed in your brief. I mean, I think you should have pointed out that that was the basis of the jurisdiction, was a preliminary injunction. I understand, Your Honor. I'm sorry, I'm not on the brief on this one, so I'll relay that message. Jurisdiction is always important to us. Understood. Understood. As to Manske, to Manske footnote four, I guess what I would say there is that I certainly don't think that's the Supreme Court saying anything goes as to regulating speech about election procedures, right? I mean, primarily, Manske came up within the context of the physical polling place itself, right? What can the State regulate there? I'm not saying that footnote was necessarily strictly limited to the physical polling place, but I think that's what the Court principally had in mind, and I certainly don't think it meant that outside there, the State can do anything. There's no First Amendment analysis that applies. I think we look to the other precedents for that. Next, you know, on defamation and false advertising, I don't think the difference there is that you bring them in court versus an administrative agency. I think the difference is that they're not political speech, that they're connected to legally cognizable harm. That's what the precedents tell us. I do want to note that we certainly did discuss other speech beyond appellant's own, you know, speech about felons on parole voting in the district court. The briefing and the complaint talk about media reports of this litigation or similar cases. It talks about speaking about the constitutional restrictions on people voting while they're under guardianship. It talks about speech by poll watchers who are contemplated by Minnesota law and who risk, you know, committing crimes just by doing their job under this statute. In any event, I think it's telling that the State's first precedent on this is the Moody v. Netchoice case about facial challenges. That wasn't a case where claims were dismissed for not talking about, you know, other speech beyond the plaintiff's. It was a case, it was a PI decision, right? And the Supreme Court said, well, this didn't, the record, the PI record didn't get developed enough for a facial challenge, so they sent it back. So even if the State were right about not talking about enough other speech, that's the most they could get. The district court should not have dismissed the case. I wanted to ask you about the prior restraint. What do we do? I think counsel makes a good argument. What do we do when a statute allows a prior restraint, but a prior restraint has not happened yet, and there are conceivable situations in which it wouldn't be a prior restraint, where you have full judicial review, it happens quickly, et cetera. So what do we do with that? I think it's the same, at least as a facial matter, it's the same overbreadth analysis that you would do for any First Amendment claim. You know, what are the ways this could be applied and, you know, are they overbroad under the First Amendment? I think the main point of the prior restraint argument is, you know, if you can't constitutionally regulate the speech at all, you certainly can't issue a prior restraint against it. But the point is that it makes the narrow tailoring analysis even harder, because if by hypothesis the State or a State judge knows about the speech that's going to happen beforehand, you would think there would be even more opportunities to do something else, right? I would go to counter speech. You know, my friend on the other side makes the point, what about speech right before an election? I would just point out this statute goes to 60 days before an election, which is way too long to say that the State doesn't have the, you know, the opportunity to flood the airwaves and make another point. This statute in particular budgeted $200,000 for State speech about this requirement. What if it was 5 days or 6 days or 24 hours? Would we be in a different situation? Twenty-four hours, definitely. Five or six days, starting to get close, in my view. Thank you, Your Honors. Thank you, counsel. The Court wishes to thank both counsel for your appearance and arguments. The case is now submitted and we'll decide it in due course.